IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GP INDUSTRIES, INC., a Nebraska corporation, | ) ) ) | |
| Plaintiff and Counter Defendant, | ) ) ) ) | 8:06CV50 |
| v. | ) ) ) | |
| JAMES E. BACHMAN, | ) ) ) | MEMORANDUM AND ORDER |
| Defendant, | ) ) ) | |
| ERAN INDUSTRIES, INC., a Nebraska corporation, | ) ) ) ) | |
| Defendant, Counter Claimant and Third-Party Plaintiff, | ) ) ) ) | |
| v. | ) ) | |
| LANCE D. BAILEY, et al., | ) ) | |
| Third Party Defendants | ) ) | |
| ERAN INDUSTRIES, INC., a Nebraska corporation, | ) ) ) ) | |
| Plaintiff, | ) ) ) | 8:06CV51 |
| v. | ) ) ) | MEMORANDUM AND ORDER |
| GP INDUSTRIES, LLC, a Nebraska Limited Liability Company, et al., | ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on GP Industries, LLC's (hereinafter, "GPI's") motion for preliminary injunction, Filing No. 28. These are consolidated actions for patent

infringement under 35 U.S.C. § 101 *et seq.*, and for related state law claims in connection with production and sale of gutter covers.  Jurisdiction is premised on 28 U.S.C. §§ 1331, 1338, and 1367.  At issue in this case is United States Patent No. 5,557,891 ("the '891 patent").  Eran Industries, Inc. ("Eran") is the patent holder.  James E. Bachman is the President and Chief Executive Officer of Eran.  Lance D. Bailey, Randall R. Bailey, Brian M. Beck, David R. Herdrich and Joshua Hesse were formerly employed by Eran, but are now officers and employees of GPI.  The court heard oral argument on the motion on June 22, 2006.

I. BACKGROUND

GPI filed an action for a declaratory judgment of noninfringement, invalidity and unenforceability of Eran's patent, and also alleged tortious interference with business relationships, and violations of the Nebraska Deceptive Trade Practices Act.  *See* Case No. 06-CV-50, Filing No. 1.  Eran then filed a separate action for patent infringement and misappropriation of a trade secret.  *See* Case No. 06-CV-51, Filing No. 1.  The actions were consolidated for discovery and trial.[1]  *See* Case No. 06-CV-50, Filing No. 20.  Both parties thereafter amended their pleadings to add claims and parties.  See Filing No. 55, Amended Complaint; Filing No. 89, Second Amended Complaint, Amended Counterclaim and Third-Party Claim.  In its amended pleadings, Eran added a RICO claim and named

---

[1] The court ordered that all pleadings were to be filed in the first-filed action. See No. 06-CV-50, Filing No. 20.  Future references to pleadings, documents and exhibits will refer to that case.  The magistrate has also ordered that for purposes of the administration of this matter the parties shall proceed as designated in the first filed lawsuit.  Filing No. 101.  Therefore, GP Industries, Inc. is properly denominated the plaintiff and counter defendant.  Eran Industries, Inc. and James E. Bachman are the defendants.  Eran Industries, Inc. has a counterclaim cross-claim against GP Industries, Inc.  Eran Industries is also the third-party plaintiff against third party defendants who are listed as defendants in paragraphs 5 through 31 of Eran's Second Amended Complaint (properly denominated Amended Counterclaim and Third-party claim) of Eran Industries, Inc. *See* Filing No. 89.

distributors, dealers and contractors as defendants.[2]  *See id.*  GPI seeks an order preliminarily enjoining Eran from "(1) seeking to prevent GPI from making and selling its gutter cover products during the pendency of this litigation and (2) making vague and unspecified allegations of infringement [of the '891 patent] against GPI in the marketplace."  Filing No. 28.

The evidence presented to the court shows that both Eran and GPI develop and market rain gutter covers.  GPI was founded by former employees of Eran who were terminated in May and August of 2005.  Filing No. 30, Index of Evid., Ex. 2, Affidavit of Randy Bailey ("R. Bailey Aff.").  The former employees contend that they were terminated in retaliation for notifying Eran's Board of Directors of alleged illegal acts by Mr. Bachman. *Id.* at 2.  GPI has invested many months of effort and substantial sums of money to develop, produce and market its products.  *Id.*  Its marketing efforts have involved more than 250 sales presentations, customer mailings, and visits to identify potential clients and to create customer relationships.  *Id.*

The evidence shows that on January 31, 2006, Eran, through counsel, sent letters to its network of dealers and wholesale contractors, who were also customers or potential customers of GPI, informing them that GPI planned "to manufacture and sell a gutter cover" that infringed the '891 patent.  Filing No. 59, Index of Evid., Ex. 1, Affidavit of James E. Bachman ("Bachman Aff."), Ex. A.  The letters stated that GPI was marketing a product that

---

[2]The added parties are:   General Stamping, Inc.,  Specialty Tool and Machine, Daniel Stava, Gregory M. Stava, Exovations of Atlanta, LLC, Roone Unger, A Gutter Solution, LLC, Central Aluminum Supply Corporation, Scott Katz, First Choice Gutters and Siding, Inc., Gutter Defender Inc., Guttersdirect.Com, LLC, Gutters For Less, Incorporated, Lakeside Gutter Products, Inc., James L. Sipes, Omaha Gutter & Siding Company, Sul-Co, Inc., Doyle J. Sullivan, Sela Roofing and Remodeling, Inc., and WW Distributors, LLC.

infringed Eran's patent and that Eran intended to assert its rights under the law, but that it intended to "focus its enforcement efforts against GP Industries" and had "no plans to sue any distributors or customers who cooperate with its efforts to stop GP Industries' infringement." *Id.,* Ex. A at 2.  GPI filed its declaratory judgment complaint on February 7, 2006, and Eran filed its patent infringement complaint on February 8, 2006.

GPI's motion for a preliminary injunction was filed on March 31, 2006, and was pending on May 10, 2006, when Eran's attorneys, at Bachman's instruction, sent a second letter to approximately twenty of its former dealers and contractors informing them that GPI's products were based on a misappropriated trade secret design.  *Id.*, Bachman Aff., Ex. B at 1-2.  The letter included assertions that GPI's conduct constitutes "mail fraud, interstate transportation of stolen property, and other criminal activity" and further that the "activities constitute a pattern of racketeering activity that is a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO)."  *Id.* at 2.  The correspondence warned the dealers and contractors that they would be added as defendants in the present litigation if they failed to stop selling GPI's products and threatened imposition of treble damages as a remedy.  *Id.*  Eran's proposed Second Amended Complaint was attached to the correspondence.  *Id.* at 3.

GPI has shown that its customers rescinded orders of over $600,000 after they were contacted by Eran.  Filing No. 30, Bailey Aff. at 3; *see also* Filing No. 67, Index of Evid., Ex. 13, Declaration ("Decl.") of Philip Riley, Ex. 14, Decl. of Ray Wilson, Ex. 15, Decl. of Mark Hurd.  GPI has also shown that its reputation has been damaged by the allegations.  *Id.*  Additionally, it has shown that it will be unable to maintain or increase its market share

or recoup its substantial investment in the face of Eran's allegations and consequently may go out of business.  *Id.*, Bailey Aff. at 3-4.

Eran asserts that it acted within its rights in sending the communications and that it conducted a reasonable investigation into infringement.  The evidence shows that prior to sending communications alleging patent infringement to GPI's customers and potential customers, Eran's President, James Bachman, obtained and examined a prototype of GPI's purported product.  Filing 59, Index of Evid., Ex. 1, Affidavit of James E. Bachman ("Bachman Aff.") at 5.  Bachman states that he formed "a good faith belief that the prototype samples infringed the '891 patent."  *Id.*  Eran also submitted the affidavit of Alfred Parr, a Professor of Civil, Environmental and Architectural Engineering at the University of Kansas, who states that he was provided with a sample of what he believed to be GPI's Leaf-X product and that based on his experiments and observations, he believes that "claim 1 of the '891 patent reads on the Leaf-X product" that he tested.  Filing No. 59, Ex. 2, Affidavit of Alfred Parr ("Parr Aff.") at 3.

GPI has presented evidence that its product does not infringe the '891 patent, as well as evidence relevant to prior art defense.  *See* Filing No. 83, Ex. 22, Aff. of Lance Bailey, ("L. Bailey Aff.") at 3; Exs. 18-21, United States gutter cover Patents.  Further, GPI has presented evidence of numerous other similar gutter covers on the market.  Filing No. 50, Ex. 4.  GPI denies that it appropriated trade secrets and has submitted affidavits to that effect.  *See* Filing No. 83, Exs. 4, 5, 8, 9, 10 & 11.

II. DISCUSSION

A. Law

The grant or denial of a preliminary injunction in connection with a dispute arising under the Patent Act is within the sound discretion of the district court. *Amazon.com, Inc. v. Barnesandnoble.com,* 239 F.3d 1343, 1350 (Fed. Cir. 2001). Familiar principles of equity "apply with equal force to disputes arising under the Patent Act." *eBay, Inc. v. MercExchange, L.L.C.,* --- U.S. ----, ----, 126 S.Ct. 1837, 1839 (2006). Under the familiar principles of equity, the moving party must establish its right to a preliminary injunction in light of four factors: (1) the movant has some likelihood of success on the merits of the underlying litigation; (2) immediate irreparable harm will result if the relief is not granted; (3) the balance of hardships to the parties weighs in the movant's favor; and (4) the public interest is best served by granting the injunctive relief. *Polymer Techs., Inc. v. Bridwell,* 103 F.3d 970, 973 (Fed. Cir. 1996). These factors roughly correspond to the factors generally applied in this circuit with respect to injunctive relief. *See Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113-14 (8th Cir.1981) (*en banc*) (holding that a movant must demonstrate essentially the same four factors). Communication to possible infringers concerning patent rights is not improper if the patent holder has a good faith belief in the accuracy of the communication. *See, e.g., Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891, 897 (holding that an alleged infringer cannot maintain a state law action for deceptive trade practices against a patent holder for sending letters threatening patent-infringement suit); *Mallinckrodt, Inc. v. Medipart, Inc.,* 976 F.2d 700, 709 (Fed. Cir.1992) (stating that a patent holder who "has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers"). In general, a

threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights.  *Id.*  (holding that a showing of bad faith is required to bar communications giving notice of patent rights).

In assessing the likelihood of success on the merits, the court considers the likelihood of infringement, applying the two-step process of determining the scope and meaning of the patent claims asserted and comparing them to the allegedly infringing device.  *Oakley, Inc. v. Sunglass Hut Intern.,* 316 F.3d 1331, 1339-40 (Fed. Cir. 2003).  Similarly, in considering defenses, an assessment of the likelihood of validity of a patent claim over the prior art also involves a two-step process:  claim construction and comparison of the asserted claims with the prior art.  *Id.* at 1339.  Although the principles of claim-by-claim analysis and of construction-before-comparison-to-prior-art apply in the context of a preliminary injunction as well as at trial, the accused infringer's burden of proof is notably different in the two contexts.  *National Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.,* 357 F.3d 1319, 1334 (Fed. Cir. 2004) (vacating preliminary injunction enjoining infringement because district court erred in finding that the patentee showed a likelihood of success in overcoming the accused infringer's defenses).

At the preliminary-injunction phase, once the accused infringer has posed a substantial question of invalidity, the patentee must demonstrate that the invalidity defense lacks substantial merit.  *Id.* at 1334; *Abbott Laboratories v. Andre Pharm., Inc.,* 452 F.3d 1331, 1335 (Fed. Cir. 2006).  Thus, validity challenges during preliminary injunction proceedings can be successful, that is, they may raise substantial questions of invalidity, on evidence that would not suffice to support a judgment of invalidity at trial.  *Amazon.com,*

*Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1358 (Fed. Cir. 2001); *Helifix Ltd. v. Blok-Lok, Ltd.,* 208 F.3d 1339, 1352 (Fed. Cir. 2000) (holding that the allegedly anticipatory prior art references sufficiently raised a question of invalidity to deny a preliminary injunction, even though summary judgment of anticipation based on the same references was not supported).

        B.  Analysis

Notably, Eran does not seek any injunction barring GPI from manufacturing or distributing the allegedly infringing gutter covers. The only issue is whether the court enjoins Eran's communications to present or potential customers. Although the necessity for an injunction may be mooted in part by Eran's third-party complaint against alleged potential infringers, the court will address the issue with respect to Eran's future communications to others. At issue are two forms of communication, those that inform of Eran's patent rights, exemplified by January 31, 2005 letters and those that allege other wrongs, exemplified by the May 10, 2005 letters.

Although, absent a showing of bad faith, Eran may be within its rights to notify potential infringers of purported patent infringement, its correspondence goes far beyond mere assertion of patent rights. The court finds Eran's activities approach the bad-faith threshold. There has been no showing that Eran's President examined any product actually sold or distributed by GPI, or made any effort to ascertain that the prototype became GPI's product. The evidence does not show that any expert advice or opinions were sought before Eran made the accusations of infringement. Eran's action was filed only after its former employees sought recovery of wages in state court and filed this federal action. The letters sent by Eran are particularly scurrilous, accusatory and threatening. Moreover, the

timing of the action vis-a-vis the termination of the former employees invites an inference of retaliatory motive. Also significant is the fact that Eran never asserted a patent infringement claim against the manufacturers of other similar gutter covers. Under the circumstances, the court finds that Eran's accusations were made in disregard of the truth or falsity of the purported infringement.

Applying the *Dataphase* factors, the court first finds that GPI has shown a threat of irreparable harm in connection with continued correspondence. The correspondence includes allegations of fraud, theft, and other criminal activities. GPI has demonstrated that its business has been, and will be, irreparably harmed by Eran's dissemination of these accusations. GPI has also shown more than a mere economic injury; it has shown harm to its reputation and integrity. Eran, on the other hand, having already sued to protect its patent, will suffer little by being ordered to refrain from making further allegations or accusations during the pendency of this litigation. Because an infringement suit has been filed, Eran has no need to provide notice of infringement. The threatened legal action has been taken and disputed issues await resolution by this court.

Moreover, Eran will have an adequate remedy in damages if it succeeds on its patent claim. It can recoup any royalties under its patent and can recover damages for other breaches if proven. The balancing of these harms favors GPI.

With regard to probability of success on the merits, the court finds that the validity of Eran's patent presents a close question. At this stage of the proceedings, it is by no means clear that Eran has a valid patent or that GPI's product infringes that patent. GPI has presented evidence of invalidity and Eran has not shown that GPI's invalidity defense lacks substantial merit. The same is true with respect to GPI's claim that its product does

9

not infringe the '891 patent, if valid.  Eran has not shown probability of success on its other claims, which form the basis of its averments of theft, fraud and RICO violations.  Recovery for misappropriation of trade secrets claim involves resolution of factual issues that the court cannot address at this time.  At this stage of the proceedings, it cannot be said that either one side or the other will prevail on the ultimate issues.

In addition, although the public interest favors enforcing a valid patent, there is a substantial question as to validity.  Accordingly, the court finds GPI's motion for a preliminary injunction should be granted with respect to future correspondence by Eran to present and potential customers during the pendency of this suit.

IT IS ORDERED that:

1. GPI's motion for a preliminary injunction (Filing No. 28) is granted;
2. Eran Industries and James Bachman are ordered to refrain from communicating information such as that contained in its January 31, 2006 and May 10, 2006, correspondence to its customers, distributors, contractors and others during the pendency of this litigation.

DATED this 8th day of November, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge