IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GP INDUSTRIES, LLC, a Nebraska Limited Liability Company, | ) ) ) | CASE NO. 8:06CV50 |
| Plaintiff and Counter Defendant, | ) ) | |
| vs. | ) ) | |
| JAMES E. BACHMAN, | ) ) | |
| Defendant, | ) | MEMORANDUM AND ORDER |
| ERAN INDUSTRIES, Inc., a Nebraska Corporation, | ) ) ) | |
| Defendant, Counter Claimant and Third-Party Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| LANCE D. BAILEY, et al., | ) ) | |
| Third-Party Defendants. | ) ) ) | |
| ERAN INDUSTRIES, Inc., a Nebraska Corporation, | ) ) ) | CASE NO. 8:06CV51 |
| Plaintiff, | ) ) | |
| vs. | ) ) | MEMORANDUM AND ORDER |
| GP INDUSTRIES, LLC, a Nebraska Limited Liability Company, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

These consolidated cases seek resolution of claims concerning the validity of a patent related to the design of a gutter system, including claims based on federal and state laws. GP Industries, LLC (hereafter "GPI") filed its original Complaint on February 7, 2006.

GPI sued Eran Industries, Inc. ("ERAN") and its founder and president James Bachman. (Case No. 8:06CV50).  The relief GPI seeks includes a declaratory judgment that GPI has not infringed on ERAN's patent and that ERAN's patent is invalid and unenforceable. ERAN answered GPI's Complaint and filed its own separate Complaint against GPI and several of ERAN's former distributors.  (Case No. 8:06CV51).  On March 30, 2006, the cases were consolidated, and ERAN's claims in the second action have been treated as a counterclaim against GPI and third-party claims against certain of ERAN's former employees, manufacturing representatives and distributors.  (Filing No. 89, amended by Order at Filing No. 101).  ERAN's counterclaim and third-party claims allege violations under the Racketeer-Influenced and Corrupt Organizations Act (hereafter "RICO"), 18 U.S.C. § 1961, et seq., patent infringement, false patent marking, false advertising, misappropriation of trade secrets, deceptive trade practices, tortious interference with business relationships, breach of duty of loyalty, unfair competition, violations of the Nebraska Consumer Protection Act and spoliation of evidence.  (Filing No. 89, Second Amended Complaint).

GPI filed a motion for preliminary injunction on March 31, 2006.  (Filing No. 28). On June 22, 2006, Chief Judge Joseph F. Bataillon presided over the hearing on the motion for preliminary injunction.  (Filing No. 78).  Pending resolution of the motion, discovery was stayed.  (Filing No. 142).  On November 8, 2006, Chief Judge Bataillon granted GPI's motion for preliminary injunction in part, ordering ERAN to refrain from sending threatening letters to GPI's distributors and customers, but denying the remaining requested relief.  (Filing No. 192).  On December 2, 2006, GPI filed an interlocutory appeal with the United States Court of Appeals for the Federal Circuit (Filing No. 195), and

2

discovery has been stayed except by agreement of the parties until further notice of this Court.  (Filing No. 213).

Generally, a notice of appeal to a circuit court divests the district court of jurisdiction over the matters appealed.  *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982) ("[t]he filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal"); Fed. R. Civ. P.  62(a).  However, application of the general rule in an appeal of a preliminary injunction order is limited to those matters involved in the appeal.  *West Pub. Co. v. Mead Data Cent., Inc.,* 799 F.2d 1219, 1229 (8th Cir. 1986) ("the pendency of an interlocutory appeal from an order granting or denying a preliminary injunction does not wholly divest the District Court of jurisdiction over the entire case"); *Janousek v. Doyle,* 313 F.2d 916, 920 (8th Cir. 1963) ("filing of the notice of appeal from [interlocutory order denying a preliminary injunction motion] does not *ipso facto* divest the district court of jurisdiction to proceed with the cause with respect to any matter not involved in the appeal ."); see also, Fed. R. Civ. P.  62(a).  Because the appeal from the issuance of the preliminary injunction is restricted to the narrow issues decided in that order, the Court will consider the outstanding motions.

Following transfer of the case to the undersigned on May 1, 2007 (Filing No. 223), the following motions are ripe for resolution:

3

1.      A motion to dismiss for lack of personal jurisdiction filed by several of the Third-Party Defendants[1] (hereafter the "Nonresident Distributors") (Filing No. 145);

2.      The Third-Party Defendants' motion[2] to dismiss the Racketeer-Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., claim brought against them by ERAN (Filing No. 160);

3.      Third-Party Defendant Joshua Hesse's Motion for Extension of Time in which to File a Reply in Support of the Motion to Dismiss (Filing No. 185)

4.      ERAN's motion to stay the Court's Preliminary Injunction pending resolution of its interlocutory appeal to the Court of Appeals for the Federal Circuit (Filing No. 206);

5.      Third-Party Defendant Joshua Hesse's Motion for Summary Judgment, (Filing No. 216);

---

[1] The Third-Party Defendants that seek dismissal based on lack of personal jurisdiction are Exovations of Atlanta, LLC, Roone Unger, A Gutter Solution, LLC, Central Aluminum Supply Corp., Scot Katz d/b/a CKC Cleaning Specialists, Gutter Defender, Inc., Guttersdirect.Com, LLC, Gutters For Less, Inc., Lakeside Gutter Products, Inc., Sul-Co, Inc., Doyle J. Sullivan, Sela Roofing And Remodeling, Inc., and WW Distributors (hereinafter "Nonresident Distributors").

[2] The Third-Party Defendants (hereafter the "Distributors") that seek dismissal of the RICO claim are A Gutter Solution, LLC, Central Aluminum Supply Corporation, Exovations of Atlanta, LLC, First Choice Gutters and Siding, Inc., General Stamping, Inc., Gutter Defender Inc., Gutters For Less, Incorporated, Guttersdirect.Com, LLC, Scott Katz, Lakeside Gutter Products, Inc., Omaha Gutter & Siding Company, Sela Roofing and Remodeling, Inc., James L Sipes, Specialty Tool and Machine, Daniel Stava, Gregory M. Stava, Sul-Co, Inc., Doyle J. Sullivan, Roone Unger, and WW Distributors, LLC (hereafter, "the Distributors").

4

6.     ERAN's motion pursuant to Fed. R. Civ. P. 56(f) in opposition to Joshua Hesse's motion for summary judgment (Filing No. 219); and

7.     Third-Party Defendant Joshua Hesse's Motion for an Enlargement of Time to File Reply and Opposition Papers (Filing No. 224).

The order staying discovery does not affect the Court's ability to resolve these motions pending the Federal Circuit Court's consideration of the petition for interlocutory appeal. The Court will address each motion in turn, beginning with those that challenge the Court's jurisdiction.

## 1.   Personal Jurisdiction

In order to survive the motions to dismiss for lack of personal jurisdiction, Third-Party Plaintiff ERAN needs only make a prima facie showing of personal jurisdiction over the nonresident Third-Party Defendants. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). The Court must view the evidence in the light most favorable to ERAN and must resolve all factual conflicts in its favor. *Romak USA, Inc. v. Rich*, 384 F.3d 979. 983-84 (8th Cir. 2004).

In determining whether this Court has personal jurisdiction over the nonresident Third-Party Defendants, two issues are presented: (1) whether the requirements of the Nebraska long-arm statute,  codified at Neb. Rev. Stat. § 25-536 (2006)[3], are satisfied, and

---

[3]The Nebraska long-arm statute provides:

A court may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to a cause of action arising from the person:

(a) Transacting any business in this state;

(2) whether the exercise of jurisdiction over the nonresident Third-Party Defendants will violate the Due Process Clause of the Fourteenth Amendment. *Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 696-97 (8th Cir. 1995). Because Nebraska's long-arm statute has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution, constitutional limits will dictate whether personal jurisdiction over the Third-Party Defendants is proper. *Quality Pork Intern. v. Rupari Food Services, Inc.*, 675 N.W.2d 642, 649 (Neb. 2004).

"Due process for personal jurisdiction over a nonresident defendant requires that the defendant's minimum contacts with the forum state be such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The nonresident

---

(b) Contracting to supply services or things in this state;

(c) Causing tortious injury by an act or omission in this state;

(d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(e) Having an interest in, using, or possessing real property in this state; or

(f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

Neb. Rev. Stat. § 25-536 (2006).

defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and it is essential that "'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Purposeful availment" means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party. *Id.* Although the minimum contacts analysis applies equally to non-resident sellers and buyers, the United States Court of Appeal for the Eighth Circuit has recognized that "non-resident sellers who ship goods into the forum state are more likely to have minimum contacts than are non-resident buyers of goods from a forum state." *H & W Wire Corp. v. Lone Star Wire, Inc*., 34 F.3d 1070 (8th Cir. 1994) (citing *Precision Constr. Co. v. J.A. Slattery Co.*, 765 F.2d 114, 118 (8th Cir. 1985)).

Once it has been shown that the nonresident defendant has contacts with the forum state, those contacts must be analyzed in light of other factors to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with "fair play and substantial justice." *Burger King* at 476. The factors, as articulated by the Eighth Circuit Court of Appeals, are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir.

1996) (citing *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983)); see also *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004). The fourth and fifth factors are of secondary importance and not determinative. *Land-O-Nod,* 708 F.2d at 1340. In applying these factors, the central inquiry is the "'relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

It is the third element of the above test -- the relationship between the cause of action and the contacts -- that gives rise to the distinction between specific and general jurisdiction. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within a forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (citing *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir.), *cert. denied*, 510 U.S. 814 (1993)). When specific jurisdiction exists, "[a]ll that is required is that a commercial actor purposefully direct its efforts toward residents of the forum state." *Bell Paper Box,* 22 F.3d at 820.

"In a contract case a court must consider the parties' prior negotiations, contemplated future consequences and actual course of dealings. The terms of the contract must be taken into account as well." *St. Jude Medical, Inc. v. Lifecare Intern., Inc.,* 250 F.3d 587, 591 (8th Cir. 2001) (citing *Burger King*, 471 U.S. at 479)). Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed,

8

or within a reasonable period of time immediately prior to the filing of the lawsuit. *Pecoraro*, 340 F.3d at 562.

The Nonresident Distributors press two main arguments in support of their motion to dismiss this action. First, each of the Nonresident Distributors contends it is domiciled outside the state of Nebraska and that each lacks the required minimum contacts with Nebraska necessary to satisfy the exercise of jurisdiction under Nebraska's long-arm statute. The Nonresident Distributors argue that this Court's exercise of personal jurisdiction over them would offend notions of fair play and substantial justice inherent in the Due Process Clause. Second, the Nonresident Distributors contend that ERAN has no right to national service of process over them pursuant to RICO because ERAN has failed to state a claim upon which relief can be granted against them under RICO.

As a preliminary matter, in considering the evidence offered in opposition to the motion, the Court rejects ERAN's argument that the so-called "warning letters" that ERAN sent to the Nonresident Distributors constitute evidence of the Nonresident Distributors' purposeful contact with Nebraska. (Copies of the letter can be found at Filing No.184, Hurd Aff. Ex. D, letters dated January 31, 2006; and Ex. E, letters dated May 10, 2006). A plaintiff cannot manufacture a factual basis for the exercise of jurisdiction over another party by its unilateral actions, and the circumstances presented here are readily distinguishable from cases in which a *nonresident* patent holder sends such letters to distributors who reside in the forum state. The Court will not consider the warning letters as evidence relevant to the minimum contacts analysis.[4]

---

[4] ERAN also provided a copy of GPI's business plan, which mentions advance orders to be placed by certain Nonresident Distributors, but that mention, like the "warning letters," is a unilateral

The Nonresident Distributors' evidence that they lack minimum contacts to Nebraska includes affidavits that the Nonresident Distributors have never manufactured any products in Nebraska; have never maintained any offices, inventory or bank accounts in Nebraska; have not used mailing addresses or phone listings in Nebraska; and have not employed representatives, distributors, or registered agents in Nebraska. The Nonresident Distributors have not advertised in Nebraska, have not attended trade shows in Nebraska, have not owned, used, leased, rented,  possessed, any property in Nebraska, and have never imposed a lien on any property within the state.  At least with regard to the product sales by GPI to them, the Nonresident Distributors have shown that GPI initiated the business relationship with them, and that GPI solicited their business by calling upon them in the states where they reside, not in Nebraska.  The Nonresident Distributors state that they have never solicited any product sales in Nebraska; and they know of no gutter products that are the subject of this action which have been resold by them for an end-user in Nebraska.  (Filing No. 147, Index of Evidence, Declarations listed as 1-12 (hereafter "Nonresident Distributor Declarations")).  The Nonresident Defendants argue that these undisputed facts establish that they have not "purposefully availed themselves" of the benefits of Nebraska's laws.

Temporarily setting aside the question of whether RICO provides ERAN with a mechanism for nationwide service, addressed below, ERAN argues that the motion to dismiss for lack of personal jurisdiction over the Nonresident Distributors must be denied because the Nonresident Distributors have transacted business in the state.  ERAN has

---

act by a third-party that cannot create a factual basis upon which to exercise jurisdiction over the Nonresident Distributors.

provided evidence that each of the Nonresident Distributors has placed multiple orders, ranging in number from 2 to more than 400 separate orders, for ERAN products over a period of four years between approximately 2002 and 2006.  (Filing No. 184, Second Declaration of James E. Bachman at Ex. A).  In addition, Bachman argues that each of the Nonresident Distributors ordered gutter products from GPI, a Nebraska company, after 2005 for the purpose of reselling the products in the national, retail market.  ERAN argues that both ERAN and GPI manufactured gutter products in Nebraska based on those orders.  ERAN contends that these contacts are sufficient in number and character to subject the Nonresident Distributors to the Court's jurisdiction.  (Filing Nos. 183 and 184, filed under seal).

ERAN has submitted uncontroverted evidence that demonstrates that each of the Nonresident Distributors placed orders with ERAN for its  Leafproof® product-line during the period covering approximately 2002-2006.  (Filing No. 184, Second Bachman Declaration ¶2, and Ex. A).  The lowest revenue-generating customer, based on a single Nonresident Distributor's aggregate order during these years, placed orders that exceeded $6,000.  ERAN's evidence regarding the Nonresident Distributors' contacts also includes information that orders that were placed with GPI for their Leaf - X and Leafree gutter products in 2006.  (Filing No. 184, Hurd Declaration, Exhibit B).  ERAN presumes and argues that these transactions with GPI would have required the Nonresident Distributors to contact GPI in Nebraska to place orders, which in turn caused the manufacturing of GPI's products in Nebraska.  (Id.)    The evidence reveals that the great majority of

purchase orders were placed on the order forms prepared by the Nonresident Distributors, and there is no indication that the Nonresident Distributors were ever present in Nebraska[5].

In their reply brief, the Nonresident Distributors argue that it is "legal error" for ERAN to assert that the Nonresident Distributors' former dealings with ERAN suffice to show the minimum contacts necessary for specific jurisdiction because these prior dealings have nothing to do with the infringement action that is now pending with the Court. They argue that ERAN cannot identify a single transaction that was initiated by the Nonresident Distributors in the state of Nebraska, and they maintain, without legal citation, that "[a] simple acceptance in one's home forum is not an act by which one expects to be haled before a distant court, or by which one 'purposefully avails' oneself of the privilege of conducting activities within another forum."  (Filing No. 189, p. 4).

Based on the evidence, the Court finds that the Nonresident Distributors' contact with the state of Nebraska is that they have placed orders for products that are shipped from Nebraska.  Whether those contacts constitute a sufficient basis to exercise jurisdiction over them without offending their due process rights is another question.  The Nonresident Defendants have not distributed the gutter products that they purchased from ERAN or GPI inside the forum state.  The record contains no specifics describing the manner in which the orders were placed with ERAN, except as the Court has noted.  The Nonresident Distributors have provided evidence that GPI representatives went to the Nonresident

---

[5]  One purchase order form contains a notation that the buyer may have been expected in Nebraska to pick up the gutter products, but there is no foundation for that notation and no indication whether the pick-up occurred. On another purchase order, there is an indication that the order was confirmed by use of an e-mail transmission, which is insufficient to establish the necessary minimum contacts.  (Filing No. 184, Hurd Declaration, Exhibit B at documents numbered GP506 and STG 193).

Distributors to solicit orders, and that orders were not taken in Nebraska. ERAN does not allege that the Nonresident Distributors initiated the contact with ERAN.

The Court concludes that the first and second *Burlington* factors relating to the nature and quality of the contacts weigh against an exercise of personal jurisdiction over the Nonresident Distributors given the failure of the evidence to establish that the Nonresident Distributors sought out the Nebraska manufacturers. See *Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002) (finding no jurisdiction over a nonresident defendant that did not initiate the business relationship with the resident of the forum state); and *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 921-22 (8th Cir. 1995) (finding no jurisdiction over the nonresident defendant where the parties negotiated and contracted through a broker who was located outside the forum state, and the nonresident did not initiate the contact). The Eighth Circuit has reaffirmed, as recently as 2006, that "[c]ontact by phone or mail is insufficient to justify [the] exercise of personal jurisdiction under the due process clause," *Johnson v. Woodcock,* 444 F.3d 953, 956 (8th Cir. 2006) (citing *Porter,* 293 F.3d at 1075), and so even if there was some e-mail confirmation of orders, that is not sufficient to establish personal jurisdiction over the Nonresident Distributors.

Turning to the third factor, the relation of the cause of action to the contacts, the Court concludes that the Nonresident Distributors' placement of orders with ERAN and later with GPI is not the type of "continuous and systematic contacts" that is required to support an exercise of general jurisdiction over them. Under a specific jurisdiction analysis, due process is satisfied if a defendant, in this case a third-party defendant, has purposely

directed its activities at forum residents, and litigation results from injuries arising out of, or relating to, those activities.  In this case, we have commercial actors, the Nonresident Distributors, that have placed orders with two Nebraska manufacturers, ERAN and GPI. The products were not delivered in Nebraska,  and they were not resold by the Nonresident Distributors to end-users located in Nebraska.  The cause of action does not arise from the Nonresident Distributors' purchase orders.  Rather, this litigation arises from the dispute between GPI and ERAN regarding the validity of a patent.  Although ERAN alleges that the Third-Party Defendants have also infringed the patent, if such infringement is shown to be true, then the allegedly infringing conduct by the Nonresident Distributors occurred outside the forum.

Even though the Nonresident Distributors, like the defendant in *Trans Western*, anticipated performance -- in this case the manufacturing of the gutter products -- by ERAN and GPI in Nebraska, the Eighth Circuit Court has held that the "'foreseeability' [of an impact within the forum] alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."  *Bell Paper Box, Inc. v. Trans Western Polymers*, 53 F.3d 922 (quoting  *World-Wide Volkswagen*, 444 U.S. at 295).  For all these reasons, the Court  concludes that the contacts between the Third-Party Defendants, the litigation, and the forum are not sufficient to support an exercise of specific jurisdiction.

The Court's consideration of the "secondary factors" does not change this conclusion.  Though Nebraska has an obvious interest in providing a local forum in which its residents may litigate claims against non-residents, the state's interest is not a substitute for the sufficiency of the contacts.  The convenience of the parties favors neither side since

14

witnesses would be in both Nebraska and in other states where the Nonresident Distributors conduct the majority of their business.

For all the reasons provided, the Court concludes that the Third-Party Defendant Nonresident Distributors' motion to dismiss based on a lack of personal jurisdiction should be granted.

### 2.  ERAN'S RICO Claim Against Third-Party Defendants

The Third-Party Defendants have filed a motion to dismiss ERAN's RICO claim against them based on its failure to state a claim upon which relief may be granted.  In considering a motion to dismiss a complaint under Rule 12(b)(6), the Court must assume all the facts alleged in the complaint are true; and must liberally construe the complaint in the light most favorable to the plaintiff, in this case the Third-Party Plaintiff ERAN. *Schmedding v. Tnemec* Co., 187 F.3d 862, 864 (8th Cir. 1999).  "A Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief.  As a practical matter, a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Id.*

As the United States Court of Appeals for the Seventh Circuit has succinctly observed, "RICO . . .  does not cover all instances of wrongdoing.  Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez,* 457 F.3d 703, 705 (7th Cir. 2006).  In its Second Amended Complaint, ERAN alleges that:

80.   The defendants Lance Bailey, Randall Bailey, Beck, Herdrich, Hesse, General Stamping, Specialty Tool and Machine, Daniel Stava, Gregory M. Stava, and the Distributors have conducted and participated, directly and indirectly, in the conduct of the affairs of the enterprise of GP Industries through the aforesaid activities which constitute a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

81.   The aforesaid activities of defendants Lance Bailey, Randall Bailey, Beck, Herdrich, Hesse, General Stamping, Specialty Tool and Machine, Daniel Stava, Gregory M. Stava, and the Distributors constitute a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

(Filing No. 89, Second Amended Complaint at ¶¶ 80 - 81).  Because I conclude that ERAN has failed to state a claim for relief under RICO, the motion to dismiss the RICO claim will be granted.

RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation" of [RICO's] substantive restrictions.  In reviewing a motion to dismiss a complaint, a court must accept the factual allegations of the complaint as true.  *Anza v. Ideal Steel Supply Corp.*, — U.S. —, —, 126 S. Ct. 1991, 1994 (2006).[6] To establish a RICO violation, a plaintiff must allege and prove "(1) the existence of an enterprise; (2) defendant's association with the enterprise; (3) defendant's participation in predicate acts of racketeering; and (4) defendant's actions constitute a pattern of racketeering activity."  *Sinclair v. Hawke*, 314 F.3d 934, 943 (8th Cir. 2003) (quoting *United HealthCare Corp. v. Amer. Trade Ins. Co.*, 88 F.3d 563, 570 (8th Cir.1996)); *Asa-Brandt, Inc. v. ADM Investor Services, Inc.*, 344 F.3d 738, 752 (8th Cir. 2003).

---

[6] Hereafter, *Anza* is cited only to the Supreme Court Reporter.

16

## Conduct

The *conduct* requirement authorizes "recovery only against individuals who 'participate in the operation or management of the enterprise itself.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997)(quoting *Bennett v. Berg*, 710 F.2d 1361, 1364 (8th Cir. 1983) (*en banc*)).  It is not necessary that a RICO defendant has wielded control over the enterprise, but the plaintiff must prove that the defendant took some part in the *direction* of the enterprise's affairs.  *Id.* at 1348 (citing *United States v. Darden*, 70 F.3d 1507, 1543 (8th Cir. 1995)).  Congress did not mean to penalize all who are employed by or associated with a RICO enterprise, but only those who, by virtue of their association or employment, play a part in *directing* the enterprise's affairs.  *Id.* at 1348 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 184-85 (1993)).  Accordingly, RICO does not extend to persons who are simply conducting their *own* affairs as opposed to the affairs of the enterprise.  *Id.* at 1348-49.  Although ERAN alleges that the Distributors and the metal fabricators conspired with the GPI employees by ordering GPI's products, even after being warned by ERAN of a possible infringement, the Court concludes that the Complaint does not allege facts from which one can fairly conclude that the Third-Party Defendants were involved in the *operation, management or direction* of the alleged enterprise, as opposed to the mere performance of its own routine business affairs.

## Enterprise

To prove that an *enterprise* exists, a plaintiff must show "a common or shared purpose, some continuity of personnel, and an ascertainable structure distinct from the pattern of racketeering."  *Asa-Brandt, Inc.,* 344 F.3d at 752 (citing *Handeen*, 112 F.3d at

17

1351)). A RICO plaintiff must show an "organizational pattern or system of authority" to demonstrate the existence of an enterprise. *U.S. v. Lemm,* 680 F.2d 1193, 1199 (8th Cir. 1982). ERAN alleges that several former ERAN employees formed GPI (Filing No. 89, ¶48), and that within weeks of its formation, GPI was "marketing, offering for sale, and distributing [their products] in direct competition with ERAN." (Filing No. 89 ¶ 54). ERAN alleges that some of the Third-Party Defendants, the Distributors and the metal fabricators, "worked closely with the former ERAN employees", but the Amended Complaint does not allege that any of the Third-Party Defendants controlled or directed GPI, nor does it explain how any of them fit into a system of authority with GPI. The Court concludes that the Complaint fails to state allegations sufficient to show that the Third-Party Defendants were part of an "enterprise."

*Pattern*

Even if the former employees of ERAN who formed GPI could be found to have engaged in conduct of an enterprise separate from GPI, ERAN has failed to sufficiently plead a *pattern* of racketeering activity. Whether a plaintiff has alleged facts that amount to a "pattern" of racketeering activity involves two distinct inquiries: "whether the plaintiffs have sufficiently pleaded acts of racketeering, and whether those alleged acts can be said to form a pattern." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 919 (8th Cir. 2001). Even if the requisite predicate acts could be found to exist in the allegations of the complaint, the RICO claim still would not survive this motion because ERAN has failed to show a pattern of racketeering activity. "Continuity plus relationship" combine to produce a pattern. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, n.14 (1985) (stating that criminal conduct will form a pattern if it embraces criminal acts that have the same or similar

18

purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events). The Court finds that the continuity requirement is missing in this case. And, ultimately, the actions complained of must pose a threat of continued criminal activity. *See Thornton v. First Bank of Joplin*, 4 F.3d 650, 652 (8th Cir. 1993) (motion to dismiss granted where plaintiff failed to allege racketeering predicates posed a threat of continued criminal activity). Reading ERAN's claims liberally, the Court may be able to find a continuing threat of wrongful conduct is alleged, but not all wrongful conduct is criminal conduct, and allegations sufficient to show criminality are not presented in the Amended Complaint.

*Racketeering Activity*

With respect to racketeering activity, ERAN alleges that the Third-Party Defendants' predicate acts include violations of 18 U.S.C. §§ 2314[7] and 2315, for the receipt, possession, and selling of stolen goods and money and the transportation or transmission of those such goods or money in interstate commerce, with their knowledge that they are stolen; and mail fraud in violation of 18 U.S.C. § 1341, based on their involvement in a scheme to obtain money by fraudulent means which scheme involves the use of the mails. (Filing No. 89, ¶¶ 77-79).

---

[7] There are four elements to the offense of interstate transportation of stolen property under Section 2314: (1) the property was stolen or taken by fraud; (2) the property had a total value of $5,000.00 or more; (3) after the property was stolen or taken by fraud, the defendant moved it or caused it to be moved across a state line; and (4) at the time the defendant moved or caused the property to be moved across a state line, the defendant knew that it had been stolen or taken by fraud. *United States v. Wainright*, 351 F.3d 816, 822 (8th Cir. 2003).

19

ERAN does not allege that the Third-Party Defendants stole monies; rather, ERAN alleges that the Third-Party Defendants stole a laptop computer and trade secrets, including a diagram of a gutter system.  More specifically, paragraphs 39, 44-46, and 65-69 allege that former employees of ERAN were entrusted with knowledge of ERAN's trade secrets, which secrets allegedly included proposed product designs, and that they had knowledge of the '891 patent through their employment with ERAN.  ERAN alleges that Defendant Hesse had knowledge of a particular drawing of a proposed product design that GPI is alleged to have imitated.

ERAN also alleges that one of the former employees "removed from the premises" a laptop computer that belonged to ERAN, that he gave the computer to another former employee, and that it was returned to an ERAN representative on December 13, 2005. The Complaint alleges that the laptop was used, and even reformatted, while it was in the possession of the former employees, but the Complaint does not allege what if anything was taken or removed from the computer.  ERAN alleges that the  Third-Party Defendants conspired to engage in a pattern of racketeering activity in violation of RICO.

The Tenth Circuit Court has found that wholly intangible intellectual property is not a "good" within the meaning of 18 U.S.C. §§ 2314 and 2315.  *United States v. Brown*, 925 F. 2d 1301, 1307-08  (10th Cir. 1991) (in the copyright case, stating that these sections apply  to physical  "'goods, wares or merchandise' [and that] [p]urely intellectual property is not within this category").  This Court agrees, and I find that trade secrets, which are a form of intangible intellectual property, are not "goods" covered by Sections 2314 and 2315.

20

To the extent ERAN argues that a drawing of the gutter system that it claims was stolen is a tangible good to which the value of the intangible intellectual property attaches, and therefore is covered by 2314 and 2315, the *Brown* court's analysis is again helpful. The Tenth Circuit Court, relying on *United States v. Dowling*, 473 U.S. 207, 216 (1985), noted:

> *Dowling* cites with approval cases which involved the application of § 2314 for theft of intellectual property, *in conjunction with* theft of tangible media. *United States v. Seagraves,* 265 F.2d 876 (3d Cir.1959) (conspiracy to violate § 2314); *United States v. Greenwald*, 479 F.2d 320 (6th Cir.) cert. denied, 414 U.S. 854, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973). The Court noted that these cases "have always involved physical 'goods, wares, or merchandise' that have themselves been 'stolen, converted or taken by fraud'.... [T]he provision seems clearly to contemplate a physical identity between the items unlawfully obtained and those eventually transported, and hence some prior physical taking of the subject goods." Id., 473 U.S. at 216, 105 S.Ct. at 3132.

I find that the allegations do not state a claim that the drawing was stolen, converted or taken by fraud, given that ERAN itself published the information, if not the drawing, to its employees, included a similar drawing in its patent, which has since been published by ERAN in the May 10, 2006, letters that ERAN sent to distributors. The allegations of the amended complaint do not sufficiently plead the manner in which the drawing was allegedly misappropriated. [8]

Having determined that the allegations related to the trade secrets and the drawing are not sufficient to constitute predicate acts, the Court finds that the removal of the laptop computer from ERAN's premises is the only remaining allegation of a stolen "good" under

---

[8] Patents are required to include a specification that provides sufficient teaching such that one skilled in the art could make and use the full scope of the invention without undue experimentation. *Warner-Lambert Co. v. Teva Pharma. USA,* 418 F. 3d 1326, 1336-37 (Fed. Cir. 2005) (citations omitted).

2314 and 2315.  The Court finds that it is significant that the laptop was returned, and that ERAN did not allege what, if anything, was removed from the computer.  (Filing No. 89 at ¶60).  Even if the Court assumes that the laptop was stolen in violation of Section 2315, there are no specific allegations that the laptop was transported in interstate commerce. Even if the Court were to assume the theft of the laptop violated Sections 2314 and 2315, the singularity of the theft and the return of the property distinguish the facts in this case from *United States v. Lyons*, 992 F.2d 1029 (10th Cir. 1993).

With regard to the mail fraud allegations, ERAN "must specifically allege the circumstances constituting the alleged fraud, including such matters as the time, place and contents of any false representations, as well as the identity of the person making any such misrepresentations and what was obtained or given up thereby."  *Abels,* 259 F.3d at 918 (citing *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982)).  ERAN's Amended Complaint lacks the required specificity, and does not allege what false representations were made by the Third-Party Defendants.

Viewing ERAN's allegations in the light most favorable to the plaintiff, this case involves, at most, a dispute between competitive commercial entities.  *See Anza,* 126 S.Ct. at 1994.  ERAN's amended complaint essentially alleges injury to a single entity- itself, as the alleged patent holder.  The Court finds that ERAN has failed to plead facts sufficient to show racketeering activity, and it has alleged no pattern.  ERAN has also failed to allege facts that demonstrate actual or threatened continued criminal activity as required under 18 U.S.C. § 1962.  For all these reasons, the Third-Party Defendants' motion to dismiss the RICO claim, Count 1 of the Second Amended Complaint at Filing No. 89, is granted.

### 3.    ERAN's Motion to Stay the Preliminary Injunction

ERAN seeks to stay the Court's order preliminarily enjoining it from sending additional letters relating to the allegedly infringing conduct.  Chief Judge Bataillon's order on the preliminary injunction enjoined ERAN from communicating information similar to the content of the "warning letters" that ERAN had previously communicated to former ERAN distributors and potential future distributors.  The Court's opinion made it clear that if ERAN had shown a good faith belief that its patent was being infringed, then it would have been within its rights to so notify potential infringers.  (Filing No. 192, Memorandum and Order p. 6, 8).  However, the Court's issuance of the preliminary injunction was based on the Court's preliminary finding that the evidence supported a finding of bad faith on the part of ERAN.  *Id.* at 8.  The issue was mooted in part by ERAN's filing of claims against the distributors, essentially following through on its threats of litigation.  Significantly, the Court was not asked to enjoin the production or sale of the allegedly infringing product, in which case claim construction may have been necessary.  See *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996) (holding that a trial court may exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art).

Pursuant to Rule 62(c), the trial court is authorized to suspend, modify, restore, or grant an injunction during the pendency of an appeal in injunction cases.  Fed. R. Civ. P. 62(c).  The rule codifies the long-established and narrowly limited right of the trial court to make orders appropriate to preserve the status quo while the case is pending in an appellate court, but does not restore the jurisdiction to the district court to adjudicate anew

23

the merits of the case after either party has invoked its right to appeal and jurisdiction has passed to an appellate court.

ERAN argues that its appeal will involve the determination of whether ERAN's infringement allegations were objectively baseless, construction of the claims, and application of the construed claims to the GPI products and to prior art. I find that ERAN has not accurately described the scope of the appeal. Issues of validity of the patent and defenses to infringement were not resolved by the Court in connection with the disposition of the motion for a preliminary injunction and most likely will not be resolved by the Court of Appeals. See, e.g., *Shuffle Master, Inc. v. VendingData Corp.*, 163 Fed.Appx. 864, 869 (Fed. Cir. 2005) (declining to construe claim "without the guidance of the district court's construction"). Because the Court has found no reason to disturb the preliminary injunction, the Court will deny ERAN's motion for a stay of the preliminary injunction.

### 4.  Stay of the Proceedings

ERAN and Bachman previously filed a motion to stay the proceedings pending the determination of his interlocutory appeal. (Filing No. 204). In the Order granting the motion, Magistrate Judge Thomas D. Thalken noted that:

> It appears continuing the stay of discovery pending resolution of the preliminary injunction appeal and/or the pending motions to dismiss (Filing Nos. 145 and 160) balances the interests of the parties in preventing inequity and preserving resources.

For the reasons stated above in section 3, the Court finds no reason to stay the action pending appeal because the issue on appeal is narrow. *See Janousek*, 313 F.2d at 920 (stating that "the filing of the notice of appeal from [a preliminary injunction] . . . order does not . . . operate to automatically stay other proceedings in the cause pending the appeal").

24

Having resolved the motions to dismiss, the Court finds that the stay of discovery should be lifted so that the parties may continue discovery and the case may be progressed.

### 5.   Hesse's Motion for Summary Judgment and ERAN's Motion for Additional Time Pursuant to Fed. R. Civ. P. 56(f)

These motions will be considered together.  Joshua Hesse who has been brought into this action as a Third-Party Defendant, is a former employee of ERAN and a current employee of GPI.   With both companies, Hesse has been employed as a sales representative.  He seeks summary judgment on all claims against him, only two of which can even be brought against a defendant in an individual capacity.   Hesse's primary argument is that the Third-Party Complaint fails to state a claim upon which relief can be granted against him based on his role at GPI as a "mere" employee.  Hesse argues that even if the Second Amended Complaint states a claim, ERAN and Bachman can present no facts that would preclude Hesse's dismissal from this action as a matter of law.

Nevertheless, Hesse brought his motion as one for summary judgment during a time when discovery was stayed.  In response to Hesse's motion, ERAN filed a motion for more time to respond to the motion for summary judgment under Fed. R. Civ. P. 56(f), arguing that ERAN has not had sufficient time to conduct discovery, that it was precluded from doing so, absent agreement by Hesse, under the Court's stay.  ERAN suggests that Hesse was a co-founder of GPI, and that even if he did not possess an officer's title, Hesse was part of the executive management team and he participated in decision-making at a very high level for GPI.  ERAN does not support those argument with evidence.  The Court will provide ERAN with four weeks to accomplish the discovery needed to respond to Hesse's motion for summary judgment, and the Court will permit Hesse time to file a reply brief.

IT IS ORDERED:

1.      The Motion to Dismiss certain Third-Party Defendants for Lack of Personal Jurisdiction (Filing No. 145) is granted;

2.      The Nonresident Third-Party Defendants Exovations of Atlanta, LLC, Roone Unger, A Gutter Solution, LLC, Central Aluminum Supply Corp., Scot Katz d/b/a CKC Cleaning Specialists, Gutter Defender, Inc., Guttersdirect.Com, LLC, Gutters For Less, Inc., Lakeside Gutter Products, Inc., Sul-Co, Inc., Doyle J. Sullivan, Sela Roofing And Remodeling, Inc., and WW Distributors are dismissed without prejudice based on the Court's lack of jurisdiction over them;

3.      The Motion to Dismiss ERAN's RICO Claim as alleged against the remaining Third-Party Defendants (Filing No. 160) is granted;

4.      The RICO claim, Count 1 of the Second Amended Complaint at Filing No. 89 is dismissed with prejudice as to the Third-Party Defendants (See Filing No. 101);

5.      The unopposed Motion for Extension of Time in which to File a Reply in Support of the Motion to Dismiss (Filing No. 185) is granted; the reply brief (Filing No. 189) has been filed and considered;

6.      ERAN's Motion to Stay Preliminary Injunction Order Pending Appeal of that Order to the Federal Circuit of Appeals (Filing No. 206) is denied;

7.      The stay of discovery except by agreement of the parties (Filing No. 213, Order of Judge Thalken) is lifted;

8.    ERAN's Motion pursuant to Fed. R. Civ. P. 56(f) (Filing No. 219), which the Court construes as a motion for more time to respond to Defendant Hesse's Motion For Summary Judgment, is granted as follows: the Counterclaimant/Third-Party Plaintiff shall have until August 27, 2007 to conduct necessary discovery and to respond to Hesse's motion for summary judgment;

9.    Hesse's Motion for Enlargement of Time to File Reply (Filing No. 224) is granted as follows: Hesse shall file any reply brief and evidence on or before September 6, 2007; and

10.   Hesse's Motion for Summary Judgment on All Pending Claims (Filing No. 216) will be ripe on September 7, 2007.


DATED this 31st day of July, 2007.

                              BY THE COURT:


                              s/Laurie Smith Camp
                              United States District Judge

27