## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

GP INDUSTRIES, LLC, a Nebraska limited )
liability company, )
                                          )
               Plaintiff, )
                                          )
       vs. )
                                           )
JAMES E. BACHMAN, )
                                           )             **8:06CV50**
              Defendant, and )
                                           )       **MEMORANDUM AND**
ERAN INDUSTRIES, INC., a Nebraska )           **ORDER**
corporation, )
                                           )
       Defendant, Counter Claimant )
       and Third-Party Plaintiff, )
                                           )
       vs. )
                                           )
LANCE D. BAILEY, et al., )
                                           )
       Third-Party Defendants. )
                                           )

This matter is before the court upon reconsideration of plaintiff's (GPI) "MOTION FOR SANCTIONS AND TO COMPEL" (Doc. 281). Having considered the defendant's (ERAN) response (Docs. 293 & 294) and GPI's reply (Doc. 295), and taking judicial notice of the materials ERAN submitted in opposition to GPI's pending Motion for Protective Order (Docs. 286 & 287)[1], the court once again concludes that the motion should be granted.

---

[1] Because Docs. 286 and 287 contained so much information pertinent to the document production now at issue, the court mistakenly believed ERAN intended them to serve as its response to Filing 281 as well. Thus, it was necessary to withdraw the earlier order (Doc. 288) to allow ERAN full rule time to respond.

## BACKGROUND

On November 29, 2007, the court entered an order granting a Motion to Compel filed by GP Industries, LLC ("GPI") and directing ERAN Industries, Inc. ("ERAN") to produce for inspection and copying all documents responsive to GPI's requests for production of documents, said production to occur no later than December 24, 2007. ERAN was ordered to produce the documents either (a) as they are kept in the usual course of business or (b) organized and labeled to correspond with the categories in GPI's requests.

GPI complains that on December 21, 2007, ERAN produced approximately 3,000 unstapled pages of documents "in a jumbled fashion" and refused to identify which documents were responsive to which document requests. (The document production was also incomplete.) GPI began contacting ERAN's attorney, Michael B. Hurd, as early as January 3, 2008, about this problem.

When asked to properly identify the documents ERAN had produced, in compliance with this court's Order of November 29, 2007, Mr. Hurd maintained that the documents were produced as they were kept in the ordinary course of business, and no further identification or descriptions need be supplied. Mr. Hurd challenged GPI to provide him with case law to the contrary and offered to produce electronic images of the documents. (*See* Doc. 287-7). Ultimately, GPI demanded that ERAN supplement its responses by noon on March 11, 2008, so that GPI could prepare for the Rule 30(b)(6) deposition of ERAN Industries, noticed for March 18.[2]

---

[2]ERAN also complained that it did not have time to prepare for this deposition; however, it did not move to quash the deposition notice, which was served on March 3, 2008.

To Mr. Hurd's professed "surprise," GPI filed the pending  "MOTION FOR SANCTIONS AND TO COMPEL" (Doc. 281) on the early evening of March 10, 2008.[3]  The following day, Mr. Hurd sent a letter to GPI's counsel expressing his dismay that GPI had not waited until noon on March 11, 2008, because ERAN was preparing to provide GPI with an index to the 3,000 documents.  (*See* Docs. 287-6 & 287-10).

GPI submitted the Declaration of David Herdrich (Doc. 283-4) in support of its motion. Herdrich states that while he worked at ERAN Industries as its CFO, the company employed a file management system that had separate locations for Financial Information, Customer Information, Legal Information, Marketing Information, and Human Resources Information.  At that time, ERAN's files were organized by date, topic, or alphabetical order with file separators that divided documents for convenient retrieval.

In response, ERAN has submitted the Declaration of its President and Chief Executive Officer, James E. Bachman (Doc. 294-3).   Essentially, Mr. Bachman denies that ERAN maintains organized business files.  Mr. Bachman states that ERAN does not have an extensive file management system and the files they do maintain "do not have file separators because they do not contain numerous matters."  ERAN does maintain a file, the size of which was not revealed, "for litigation matters" but "there are no file separators because we feel this is for the attorneys to maintain."  According to Mr. Bachman, ERAN does not keep any files for most of its customers, and its file "for the inventor of the patent" is in the same condition as it was when maintained by Mr. Herdrich.  The attached photograph of ERAN's "patent inventor" file shows that it consists of a

---

[3]The notice of electronic filing indicates that the motion was "filed on 3/10/2008 and received by the system on 3/10/2008 6:34 PM CDT."

letter-size manila file folder containing two-hole punched documents that are secured in the file with

a metal clasp.  It appears that certain documents are in fact tabbed or marked with post-it notes or

other markers. Numerous certified mail receipts are stapled to the inside cover of the folder.  It is

obvious that this file (which, according to Mr. Bachman, is ERAN's most extensive file) does not

contain anywhere near 3,000 pages.

In Doc. 286, ERAN admitted that it procured documents from various locations and shipped

them in a single box to GPI's counsel.  ERAN continues to maintain that its belatedly proffered index

(Doc. 287-6) somehow demonstrates that it produced the documents as they were kept in the

ordinary course of business.  The utility of this document remains far from obvious.[4]  ERAN's

"index" consists of a two-column, 51-line table correlating certain Bates numbers with pithy

document descriptions such as "corporation info.," "Documents regarding GP Industries lawsuit,"

and "Photographs."  Even assuming that the index could be helpful, Mr. Hurd only provided it on

March 11, 2008, not when ERAN produced the 3,000 pages of documents.

The court finds that ERAN did not comply with the November 29, 2007 order commanding

it to produce all responsive documents either (a) as they are kept in the usual course of business or

(b) organized and labeled to correspond with the categories in GPI's requests.

Having conducted independent research on this issue, and after considering the case cited by

ERAN[5], the court remains convinced that the interpretation of Fed. R. Civ. P. 34 that was applied

---

[4]If ERAN's index descriptions were, in fact, "full of substance and meaning to GPI's counsel," *see* ERAN's Brief, Doc. 293 at p.3 n.2, the court would presume that GPI would not have filed a motion to compel. *See* Fed. R. Civ. P. 11.  In any event, the "index" was not timely proffered.

[5]*I.e., MGP Ingredients, Inc. v. Mars, Inc.*, 2007 WL 3010343 (D. Kan. 2007).  In that case, the producing party amply demonstrated that approximately 48,000 pages of documents, including electronically stored information, were, in fact, produced as they were kept in the normal course of business.  The producing party

in *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 617-18 (D. Kan. 2005), sets the proper standard.

In *Cardenas*, the defendant responded to the plaintiff's requests for production of documents by stating that responsive documents had been produced; however, the defendant did not explain how the approximately 18,000 documents in nine "bankers' boxes" it had produced as initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) correlated to any of the plaintiff's Rule 34 requests. The defendant's transmittal letter merely identified 12 categories of documents and their Bates stamp numbers. In the resulting discovery dispute, the defendant asserted that the documents were produced as they were kept in the usual course of business. On that issue, the court observed:

> DJG provides no additional information about these documents. It does not explain the origin of any of these twelve categories of documents, i.e. where these documents were maintained or who maintained them, and whether the documents in each category came from one single source or file or from multiple sources or files. In short, DJG does not provide the Court with any information, let alone evidentiary proof, to establish that the documents were produced as kept in the ordinary course of business. Rather, DJG merely makes the unsupported assertion that they were produced in that manner. While DJG did group the documents into twelve different categories, the Court does not find that such categorization satisfies the "usual course of business" criterion.

---

had identified the document custodians and the range of Bates numbers for each custodian's set of documents. Each custodian's documents were produced in the manner that they existed when collected. Responsive e-mail messages were arranged by custodian and then placed in chronological order as found in the custodian's e-mail mailbox. If an e-mail had an attachment, the attachment was provided directly behind the appropriate e-mail. The remainder of the electronically stored information was provided arranged by custodian, and further arranged by directory within the custodian's files, then by subdirectory, and then by file name. Under those circumstances, the court found, and the requesting party agreed, that the information was produced as it was kept in the normal course of business. Thus, citing the plain language of Rule 34, the court denied the requesting party's motion to impose a "duty to organize and label the documents, provide an index of the documents produced, or correlate the documents to the particular request to which they are responsive." 2007 WL 3010343 at *3.

The ruling in *MGP Ingredients, Inc. v. Mars, Inc.* would apply when the producing party has actually demonstrated that documents or electronically stored information were produced as kept in the normal course of business. The ruling does not apply in this case because ERAN has not met that burden.

230 F.R.D. at 618.  The court acknowledged that Rule 34 does not explain what it means to produce documents as they are kept in the usual course of business, and there was little case law on the subject.  Thus, the court held that

> a party who chooses the Rule 34(b) option to produce documents as they are kept in the ordinary course of business bears the burden of showing that the documents were in fact produced in that manner.  A mere assertion that they were so produced is not sufficient to carry that burden.  In addition, merely categorizing the documents produced does not, without some further explanation, satisfy the requirement that they be produced as kept in the usual course of business.

*Id*.

Notwithstanding the information now provided by Mr. Bachman, the court finds that ERAN has not met its burden of establishing that it produced these documents "as they are kept in the usual course of business."  Because ERAN did not produce the documents as kept in the usual course of business, ERAN should have organized and labeled the documents to correspond with the categories in each request, as required by Rule 34(b).

Finally, the court acknowledges that GPI did serve ERAN with 213 requests for production of documents on July 28, 2006; however, ERAN did not timely raise any valid objections to the requests.  Rather, as discussed in the November 29, 2007 order, ERAN asserted only general objections (which are not allowed in this district) and unsubstantiated boilerplate objections based on relevance, ambiguity, undue burden, privilege, work-product immunity, and confidentiality– and then agreed to produce responsive documents.  It is too late for ERAN to complain about this moot point.

The court finds that GPI did attempt in good faith to obtain the discovery without court action; that ERAN's nondisclosure, responses or objections were not substantially justified; and GPI

is entitled to recover its reasonable expenses (including attorney's fees) incurred in making this

motion to compel, including the expenses associated with filing its reply brief (Doc. 295).

The request in GPI's reply brief for a supplemental award of costs associated with cancelled

depositions is denied.

ERAN will be given five (5) business days in which to identify, by Bates number, exactly

which documents are responsive to each of GPI's document requests.

**IT IS ORDERED** that  plaintiff's "Motion for Sanctions and to Compel" [281] is granted,

as follows:

1.   ERAN Industries, Inc. is given until **5:00 PM on April 17, 2008** in which to identify, by
Bates number, exactly which documents are responsive to each of GPI's document requests.  Failure
to comply with this order may result in the imposition of sanctions against ERAN Industries, Inc.
pursuant to Fed. R. Civ. P. 37(b)(2).

2.   GPI is entitled to an award of costs pursuant to Fed. R. Civ. P. 37(a)(5).  The parties shall
be heard on the matter of costs and sanctions as follows:

a.   GPI shall file a "Motion for Attorney Fees," together with an affidavit attesting to the
time and expenses incurred between **December 21, 2007 and April 7, 2008**, in making the
instant motion to compel.  At this time, GPI may not request reimbursement for costs
associated with cancelled depositions.

b.   ERAN shall serve and file a response, if any, to defendant's motion for attorney's fees
within **ten (10) business days** after the motion is served, at which time the issue of costs and
sanctions will be deemed submitted and a written order entered.

**DATED April 10, 2008.**

**BY THE COURT:**

**s/ F.A. Gossett**
**United States Magistrate Judge**