**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| GP INDUSTRIES, LLC, a Nebraska Limited Liability Company, | ) ) ) | CASE NO. 8:06CV50 |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| JAMES E. BACHMAN, | ) ) | **MEMORANDUM AND ORDER** |
| Defendant, and | ) ) | |
| ERAN INDUSTRIES, INC., a Nebraska Corporation, | ) ) ) | |
| Defendant, Counter Claimant and Third-Party Plaintiff, | ) ) ) ) | |
| vs. | ) ) ) | |
| LANCE D. BAILEY, et al., | ) ) ) | |
| Third-Party Defendants. | ) | |

| | | |
|---|---|---|
| ERAN INDUSTRIES, INC., a Nebraska Corporation, | ) ) ) | CASE NO. 8:06CV51 |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | **MEMORANDUM AND ORDER** |
| GP INDUSTRIES, LLC, a Nebraska Limited Liability Company, | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the court on the Motion for Sanctions Pursuant to Rule 37(b)

(Doc. 300), and the Motion to Compel, for Further Sanctions, and for Protection for Further

Discovery (Doc. 324) filed by GP Industries, LLC (GPI). The motions are now fully briefed, and the court has taken judicial notice of all the filings in this matter.

The court finds that GPI has substantially complied with the requirements of NECivR 7.1(i).

## I.    BACKGROUND AND NATURE OF THE CASE[1]

At issue in this case is United States Patent No. 5,557,891(the '891 Patent) for a "Gutter Protection System" invented by Gregory P. Albracht.  Albracht filed his patent application on March 31, 1995.  The '891 Patent was issued to Albracht on September 24, 1996.  Albracht sold the patent to ERAN Industries, Inc. (ERAN) in 1998.  ERAN manufactures and sells a rain gutter product, Leafproof®,  under the '891 Patent pursuant to its purchase agreement with Albracht.  ERAN is the current patent holder.  James E. Bachman is the President and Chief Executive Officer of ERAN.  He is also an attorney practicing law in the State of Nebraska.

In 1999, ERAN sued Albracht in the Douglas County District Court for breach of the purchase agreement.  That lawsuit was settled in May 2000; however, the suit was reopened in 2006, at ERAN's request, to determine whether Albracht is contractually liable

---

[1]The operative pleadings are: Doc. 55, GPI's Amended Complaint; Doc. 89, ERAN's "Second Amended Complaint" (properly denominated as Amended Counterclaim and Third-party claim pursuant to Doc. 101); Doc. 117, the response and counterclaims filed by GPI and the Third-Party Defendants against ERAN; Doc. 177, ERAN's Amended Reply to Counterclaims of GP Industries, LLC, Lance D. Bailey, Randall R. Bailey, Brian M. Beck, David R. Herdrich, and Joshua Hesse; and Doc. 180, ERAN's Reply to Counterclaims of Daniel Stava, Gregory M. Stava, General Stamping, Specialty Tool and Machine, Inc., Omaha Gutter & Siding Company, James L. Sipes d/b/a Nebraska Seamless Gutters, and First Choice Gutters and Siding, Inc.

Although numerous third-party claims filed by ERAN have been dismissed, third-party claims remain pending against First Choice Gutters and Siding, Inc.; Omaha Gutter & Siding Company; James L. Sipes; General Stamping, Inc.; Specialty Tool and Machine Inc.; Daniel Stava; Gregory M. Stava; Lance D. Bailey; Randall R. Bailey; Brian M. Beck; David R. Herdrich; and Joshua Hesse.

2

under the settlement agreement to pay a portion of the attorney's fees incurred by ERAN in prosecuting this action in federal court. (*See* Doc. 302-8). In this action, ERAN asserted claims against GPI and 26 third-party defendants for patent infringement, violations of RICO, and misappropriation of trade secrets.

GPI was formed in June 2005 after its principals (Dave Herdrich, Brian Beck, Randy Bailey and Lance Bailey) were terminated as employees of ERAN.[2] GPI markets competing rain gutter products known as Leaf-X and Leafree. In this action, GPI seeks a declaratory judgment of noninfringement, invalidity and unenforceability of the '891 Patent, and has also asserted claims against ERAN based on, *inter alia*, tortious interference with business relationships and violations of the Nebraska Deceptive Trade Practices Act.

On July 28, 2006, GPI served 213 requests for production of documents on ERAN; however, discovery was stayed on August 29, 2006 pending resolution of GPI's motion for preliminary injunction and jurisdictional issues raised by the third-party defendants. Thus, ERAN did not respond to the requests at that time. The stay of discovery was lifted on July 31, 2007. ERAN served its initial responses to the document requests in September 2007. Those responses are the subject of Magistrate Judge Gossett's orders of November 29, 2007, and April 10, 2008.

On November 29, 2007, Judge Gossett entered an order (Doc. 269) granting GPI's Motion to Compel and directing ERAN to produce for inspection and copying all documents responsive to GPI's 213 requests for production of documents. ERAN, which at that time

---

[2]Herdrich, Beck, Randy Bailey, and Lance Bailey contend that they were terminated in retaliation for notifying ERAN's Board of Directors of illegal acts allegedly performed by Mr. Bachman. As of the filing of GPI's Amended Complaint on May 22, 2006, their termination dispute with ERAN was pending in state district court.

had not produced any responsive documents, was ordered to produce the documents either (a) as they were kept in the usual course of business or (b) organized and labeled to correspond with the categories in GPI's requests. The November 29, 2007, order further provided that if ERAN intended to assert any claims of privilege or work product immunity, it was required to prepare and serve a privilege log in full compliance with paragraph 5 of the initial progression order (Doc. 31) no later than December 24, 2007; otherwise, ERAN's claims of privilege or work-product immunity would be deemed waived as to any item not timely designated and described on its privilege log.

Document production did not go smoothly. GPI filed another motion to compel after ERAN produced approximately 3,000 unstapled pages of documents "in a jumbled fashion" and refused to identify which documents were responsive to which document requests. On April 10, 2008, Judge Gossett entered an order (Doc. 296) granting GPI's motion and ordering ERAN "to identify, by Bates number, exactly which documents are responsive to each of GPI's document requests." ERAN was also admonished that failure to comply with the order may result in the imposition of sanctions against it pursuant to Fed. R. Civ. P. 37(b)(2).[3]

## II.   DISCUSSION

GPI filed its Motion for Sanctions (Doc. 300) pursuant to Fed. R. Civ. P. 37(b) alleging that ERAN has asserted false claims of privilege, refused to produce documents within its control, and failed to respond to GPI's document requests, all in contempt of the

---

[3]The April 10, 2008, order also authorized GPI to file a "Motion for Attorney Fees" for time and expenses incurred between December 21, 2007, and April 7, 2008, in submitting the second Motion to Compel. GPI's Motion for Attorney's Fees (Doc. 308) will be addressed in a separate order.

court's previous orders.   In a second motion (Doc. 324), GPI elaborated on these contentions.   ERAN denies any wrongdoing.

### A.   Compliance with NECivR 34.1; Failure to Produce Documents

GPI complains that ERAN did not comply with Judge Gossett's directive "to identify, by Bates number, exactly which documents are responsive to each of GPI's document requests."   In this regard, the record shows that ERAN responded to the April 10, 2008, order on April 17, 2008, by providing a production log (*see* Doc. 305-5) correlating the Bates numbered documents with GPI's document request numbers as to the 3,000 disorganized documents it previously produced.   Responsive documents were not identified with respect to approximately one-third of the requests.   The following day, GPI promptly advised ERAN, in writing, that it did not believe ERAN had yet complied with the court's previous orders.   (*See* Doc. 302-6).   GPI demanded that ERAN provide responses in compliance with NECivR 34.1, address GPI's concerns regarding ERAN's assertion of a "joint defense privilege," and produce documents improperly withheld as privileged.

By e-mail, on April 22, 2008, counsel for ERAN replied, "Although we disagree with your interpretation of ERAN's obligations under the Federal Rules of Civil Procedure and Judge Gossett's orders, we will agree to affirmatively designate those documents [sic] requests for which ERAN has not located responsive documents..."   (Doc. 302-7).

On April 23, 2008, ERAN's attorneys sent an e-mail (Doc. 302-5) to GPI's attorneys identifying 70 requests for which no responsive documents were provided:

> I have attached an amended production log.   The log now includes those documents removed from the privilege log, as well as additional designations for some of the documents listed on the original log.   The documents removed from the privilege log will be sent to you tomorrow by e-mail.

5

> As you requested, this will serve as notice that the [production] log does not contain documents designated as being responsive to the following GPI document requests: 12, 14, 22, 23, 29, 30, 31, 34, 47, 48, 51, 54, 75, 76, 94, 95, 97, 99, 101, 102, 103, 111, 115, 116, 120, 121, 123-127, 131, 141-143, 146, 148-152, 154-158, 169-172, 174-179, 182-185, 189, 190, 192-194, 196, 197, 198, 203, 207, and 211.

The e-mail is unclear as to why ERAN produced no documents in response to approximately 70 of GPI's document requests. To this effect, ERAN offered the Declaration of James E. Bachman (Doc. 305-3), dated June 5, 2008. According to Bachman,

> ERAN conducted a diligent and reasonable search for documents responsive to GPI's document request and produced over 3,000 pages of responsive documents. As part of ERAN's efforts in locating documents responsive to GPI's document requests, my secretary spent over 100 hours reviewing and retrieving documents stored in approximately 300 boxes of ERAN's records. The documents are stored in boxes without any type of labeling or other organization. Thus, the documents in each of hundreds of boxes must be reviewed to determine whether it is responsive to any of GPI's 213 document requests.

(Doc. 305-3 at p. 2/16, ¶ 4).

The Declaration does not explain how or why Bachman's secretary is qualified to oversee the document production in a patent infringement case, the direction given to the secretary, the identity of the secretary, or when the search for responsive documents actually occurred. Nor has the secretary supplied any declaration concerning his or her role in the document production.

Bachman's Declaration avers that ERAN could not identify responsive documents due to the nature of the requests rather than ERAN's own lack of diligence. He explains in paragraphs 7 through 75 why, "after a reasonable investigation," ERAN was unable to locate responsive documents (other than documents already produced) to most of the outstanding requests. Bachman stated that ERAN would produce certain tax return

6

information, deposition transcripts, telephone records, purchase records, and the like–if the documents could be located.  (Doc. 305-3 at ¶¶ 29, 30, 46, 53, 55, 57, 58, 60).  Bachman also indicated that "privileged" documents had been withheld from discovery, but those documents were not identified on any then-existing privilege log.

ERAN did not produce any documents responsive to Request No. 124 (for documents "concerning or constituting patents, publications, or other prior art of which you are aware that concern... devices for impeding entry of debris into rain gutter systems which have a pre-manufactured bend") because none was identified during the search for documents reportedly conducted by Bachman's secretary.  (*See* Doc. 326-3 at p. 9/17, ¶ 34).

GPI has reason to believe that ERAN is in possession of responsive documents.  By declaration (Doc. 326-4) third-party defendant David Herdrich[4] states that: While employed by ERAN, he created a "Competing Product Information Binder" which contained sales, marketing and advertising literature of ERAN's competitors.  Some competing products of which ERAN was aware in 1996 included "Gutter Helmet, Gutter Topper, WaterFall, Waterloov, Hallet, LeafGuard, Gutta-Guard and Gutter Armor."  Albracht supplied Herdrich with product samples and sales literature, including WaterFall and Gutter Armor, which products preceded the '891 Patent to market.  The Competing Product Information Binder contained the WaterFall and Gutter Armor samples and product literature.  Herdrich maintained the binder with current information by collecting sales and

---

[4]Prior to his termination on May 31, 2005, Herdrich was ERAN's Executive Vice President and Chief Financial Officer.  Brian Beck was ERAN's Vice President for International Development. (Doc. 59-2 at p. 2/6, ¶ 6).  Joshua Hesse resigned from his position at ERAN on August 31, 2006 to join GPI.   (Doc. 59-2 at p. 3/6, ¶ 8).

literature and samples of competitors' products.  The binder was a white 3" binder purchased from Office Depot.  He kept it in his office at ERAN; however, the binder was moved to Jim Haller's office shortly before Herdrich was terminated from ERAN.  While employed by ERAN, Herdrich purchased thousands of feet of the WaterFall product, and ERAN routinely had hundreds of feet of WaterFall because ERAN cut WaterFall into small samples to include in its sales kits.  Herdrich also kept daily notes while he worked for ERAN.  The notes were retained and stored in two black 3" binders in his office.

Third-party defendant Brian Beck signed a declaration (Doc. 326-5) stating that he used the Competing Product Binder, which Herdrich created and kept in his office.  Beck avers that the binder contained sales literature for Gutter Helmet, Gutter Topper, LeafGuard, WaterFall, and Hallet.  While Beck worked for ERAN, he used ERAN's sales kits, which included samples of at least WaterFall and Gutter Helmet.

The Declaration of Joshua Hesse (Doc. 328-8) states that Hesse also used the competing product collection, which included product samples and literature of Gutter Helmet, Gutter Topper, Waterloov, LeafGuard, Hallet and WaterFall.  In late July and August 2005, an ERAN employee named Tom Cota received additional competitors' samples and marketing materials.

Considering the content of Bachman's Declaration, it appears that ERAN did not, in fact, conduct a diligent search for responsive documents.  Bachman also appears to assert objections to certain document requests on grounds of relevance.  He is a named defendant, and the information sought is clearly relevant to the parties' claims and defenses.  *See* Fed. R. Civ. P. 26(b)(a).  His personal objections, first made in opposition

to GPI's Motion to Compel, were not properly or timely asserted and are all deemed waived.

GPI contends that ERAN has not complied with NECivR 34.1(a), which provides: "In responding or objecting to requests to produce or inspect, the party shall first state verbatim the propounded request and immediately thereafter the response or objection to it."

The court finds that service of a production log is adequate as to the documents **which had already been produced** by ERAN by the time of Judge Gossett's April 10, 2008, order. While Judge Gossett did not specifically order ERAN otherwise to comply with NECivR 34.1(a), such an order should not be necessary. In any event, the April 10 order in no way excused ERAN from complying with the local rule. At that time, neither GPI nor the court could determine whether ERAN had produced responsive documents to all the requests.

Judge Gossett, in his November 29, 2007 order (Doc. 269), rejected ERAN's original boilerplate objections to GPI's document requests, found that ERAN's responses to GPI's requests for production of documents were insufficient, and essentially ordered ERAN to start anew in providing discovery responses to GPI. Thus, ERAN may not rely on the insufficient responses it served in September 2007 to demonstrate compliance with NECivR 34.1(a) as to the many requests for which it now claims there are no responsive documents. In other words, ERAN is required to comply with NECivR 34.1(a) and serve responses for each and every document request to which ERAN maintains there are no responsive documents, or to which ERAN maintains it cannot find any responsive documents. The Declaration of James Bachman does not satisfy this obligation.

9

**B.    ERAN's Assertion of a "Joint Defense" or "Common Interest" Privilege**

ERAN has refused to produce certain documents relating to the patent inventor, Gregory Albracht, based on its contention that the documents are subject to a joint defense privilege or common interest privilege pursuant to paragraph 2.9 of the May 2000 Purchase Agreement and Settlement Stipulation between ERAN and Albracht.  GPI contends the documents are not privileged and are relevant to the merits of the parties' patent law claims.

**1.    Factual Background**

Bachman was deposed pursuant to Fed. R. Civ. P. 30(b)(6) on July 16-17, 2008. He testified that he had discussed this case with Gregory Albracht about five to 10 times between the winter of 2006 and the spring of 2008.  He refused to discuss the substance of those conversations, asserting a "joint defense" privilege.  (Doc. 326-14 at p. 3/35, 61:8-10; pp. 6-7/35, 67:1-68:5).

Bachman admitted he had asked Albracht to perform an infringement analysis with respect to GPI's devices and the '891 patent, and Albracht did comment to Bachman about his view of infringement in this case.  Bachman then asserted privilege regarding the substance of these conversations.  (Doc. 326-14 at p. 8/35, 72:19-75:23).  Bachman's present attorney verified that the asserted "joint defense" privilege would apply to any communications made by Albracht's patent attorney, Vincent DeLuca, to any of ERAN's attorneys.  (Doc. 326-14 at p. 14/35, 78:1-8).

As grounds for asserting this privilege, Bachman testified that ERAN had "indirectly" provided legal counsel to Albracht regarding this litigation because there was a provision

10

in the settlement agreement "that says Mr. Albracht has to pay for a portion of the patent litigation fees and in return would receive a payment of any monies that are collected for infringement of the patents." (Doc. 326-14 at p. 4/35, 62:17-25). Bachman testified he did not know what evidence ERAN actually had regarding a joint defense agreement with Albracht. (Doc. 326-14 at p. 19/35, 88:5-7).

Bachman agreed that as many as eight years prior to 2005, other people had conceived of T Bend configurations for gutter covers. During this time period, he had discussions with Dave Herdrich, Brian Beck and/or Randy Bailey about ways of getting around the '891 Patent. His initial conversations with Herdrich involved how much ERAN should pay Albracht and how strong the patent was. If ERAN could design around it, the patent would not be very valuable and ERAN would not have to pay Albracht a lot of money. He stated he had discussed these issues previously with his lawyer, James Welch, the lawyer who prosecuted the '891 Patent. Bachman refused to elaborate on grounds of privilege. (Doc. 326-14 at pp. 24-26/35, 149:2-151:25). He testified that he had an attorney-client relationship with Welch "that relates back" to matters that occurred in 1995, but would not say whether he had an attorney-client relationship with Welch more than eight years before 2005. (Doc. 326-14 at p. 29/35; 154:1-12).

Bachman was aware of the gutter products that were on the market in the spring of 1996, *e.g.*, Gutter Helmet, Gutter Topper, WaterFall, Water Loov, Hallett Gutter Cover, Englert LeafGuard, and Gutter Armor. He discussed those devices with Mr. Albracht in 1996. (Doc. 340-7 at p. 4/6, 135:9-137:2).

Bachman stated that he participated in the prosecution of the '891 Patent as an agent of ERAN. (Doc. 326-14 at pp. 27-28/35, 152:19-153:1). He testified he was not

involved in preparing the written description portion of the patent or in framing the scope of the claims for the '891 Patent. Rather, his involvement was that ERAN paid a significant portion of the patent fees for the '891 Patent because Albracht did not have the money to do so. Bachman paid the money directly to Mr. Welch, but stated he did not know the source of the funds.

ERAN was formed in the spring of 1996. (Doc. 326-14 at 29-30/35, 154:20-156:14). Bachman stated that he and/or ERAN were being represented by Mr. Welch with respect to the prosecution of the '891 Patent in 1996 because they were paying Welch's fees.

Gregory Albracht was deposed on July 17, 2008.[5] He testified that he was an inventor of gutter protection systems and is the named inventor on several patents relating to gutter cover technology. (Doc. 340-24 at p.4/7, 12:1-19). He first met Bachman around 1994. Bachman was then Albracht's tax attorney. In 1995, he and Bachman entered into a business agreement to manufacture Albracht's '891 Patent. In 1998, they memorialized an agreement providing that Albracht had sold the '891 Patent and another patent to ERAN and Charles Mangimelli. (Doc. 340-24 at p. 6/7, 31:6-24).

In October 1999, however, ERAN sued Albracht in state court, contending that Albracht breached the patent sales agreement by violating an agreement not to compete. Albracht counter-claimed, alleging that ERAN was in material breach for (i) permitting an unauthorized assignment of Mangimelli's interest, (ii) failing to pay monies due to third parties, (iii) failing to provide Albracht required financial information concerning ERAN's

---

[5]The court has collected the various Albracht deposition excerpts from the parties' evidentiary submissions, placed the pages in numerical order, and considered Albracht's testimony as a whole. The citations and hyperlinks to the record are to the actual filings from which the information was obtained.

business operations and financial affairs, (iv) failing to make the October 5, 1999, minimum royalty payment of $12,000 and (v) granting an unauthorized security interest in the patents to First National Bank of Omaha.  ERAN was represented in the state court litigation by attorneys  Paul Elofson, Thomas Luebbering and possibly Michael Hurd.  Albracht was represented by attorneys Andrew Muller and Vincent DeLuca.

The state court action, Doc. 987 No. 324, District Court of Douglas County, Nebraska, was resolved in May 2000 with the execution and approval of a confidential settlement agreement.  (Doc. 341-3, filed under seal).  The settlement agreement amended certain provisions of the original purchase agreement, provided for the payment of royalties to Albracht, and also provided:

> 2.9   Payment of Legal Fees.  With respect to any litigation hereafter arising wherein some third party claims that the Patents infringe upon rights held by the third party or where Buyer [ERAN] reasonably alleges that some third party has infringed the Patents (hereafter "Patent Infringement Litigation"), [ERAN] shall pay the first [$5,000.00] in attorneys' fees, cost and expense, and, thereafter, [Albracht] agrees to reimburse [ERAN] fifty percent (50%) of the attorneys' fees, cost and expense reasonably incurred by [ERAN] in the Patent Infringement Litigation....

At ERAN's request, filed May 24, 2006, the state court case was reopened by order entered October 17, 2006.  ERAN seeks an order from the state district court to the effect that Albracht is obligated to share in the costs and expenses of this federal court lawsuit pursuant to paragraph 2.9 of the settlement stipulation, quoted above.  (See Doc. 302-8 at p. 1/9, ¶¶ 1 & 2).  During a hearing in state court on June 12, 2006, counsel for ERAN represented to the court that Albracht had been seeking communications from ERAN's counsel about ERAN's infringement analysis.  Counsel advised that ERAN was "not in a position to reveal that to Mr. Albracht without risking the violation of attorney/client

13

privilege."  ERAN's attorney further stated that "[w]e have invited Mr. Albracht to undertake a joint defense agreement in which he makes assurances that this will not be a violation of privilege," but Albracht's patent attorney, DeLuca, refused to do so.  (Doc. 302-9 at pp. 1-2/3).  Bachman testified at the hearing that ERAN could not give Albracht the opinion of counsel regarding the patent matter "because we don't have a joint defense agreement yet in place."  (Doc. 302-9 at p. 3/3).

In the state court action, Albracht denies that ERAN is entitled to deduct any funds from his royalty payments for the attorney fees ERAN has incurred in this federal court lawsuit.  Albracht has taken the position that ERAN may deduct payment for attorneys' fees from Albracht's royalty payments, *inter alia*, only if the fees are incurred in conjunction with a lawsuit wherein ERAN "reasonably alleges" that a third party is infringing on the patents.  Albracht contends that ERAN unilaterally decided to initiate this federal litigation without providing him any documentation of the alleged infringement or any documentation demonstrating that its allegations of infringement are reasonable.  (Doc. 302-8 at pp. 8-9).  Albracht has asserted in state court that ERAN's claims of infringement against GPI are baseless and unfounded, and that ERAN has unreasonably sued GPI for patent infringement.  Albracht further requested that the state court action be reopened for the purpose of finding ERAN in default of the settlement agreement based on ERAN's alleged breach of a contractual obligation to maintain certain international patent application rights that were pledged as security for the settlement/purchase agreement.  (*See* Doc. 302-8 at p. 2/9, ¶¶ 5-7; Doc. 302-8 at pp. 4-7/9).

During his deposition, Albracht characterized the pending state court litigation as a dispute with ERAN "over whether I owe patent fees or fees associated with an infringement

case[6], as well as ERAN's default of my international patents for not following through."
(Doc. 340-21 at p. 3/9, 40:10-18). Albracht's position is that he is not liable to contribute
to ERAN's litigation costs in this case because Bachman has never proven that the costs
were reasonable. (Doc. 340-21 at p. 4/9, 42:12-15). Although Albracht was aware that
ERAN had filed this patent infringement case against GPI, he was not aware of any
prefiling investigation performed by ERAN regarding the patent in suit. He testified he has
never analyzed GPI's products or compared the claims of the '891 Patent to GPI's
products. (Doc. 340-24 at p.4/7, 10:8-11:23).

Albracht stated that he invented a product called Gutter Armor in 1993 or 1994. He
then invented the '891 Patent and received another patent for a combination retrofit system.
(Doc. 340-24 at p. 4/7, 13:11-16). According to Albracht, there were a number of products
manufactured in the gutter cover industry in 1993-1994, including Gutter Helmet, Water
Loov, WaterFall, and Elko GuttaGard. He described how he invented the Gutter Armor
product, his experience in installing gutters, and the various products marketed around
1993-1994. (Doc. 340-24 at pp. 4-5). During his deposition, Albracht reviewed the product
brochure (copyrighted 1999) for the WaterFall Gutter Guard, a product manufactured by
Crane Plastics of Columbus, Ohio (deposition exhibit 81, Doc. 328-5). Albracht testified
he first saw such a document around 1994 or 1995, whenever the product was introduced.
(Doc. 340-8 at p. 5/7, 20:1-21:21).[7]

---

[6]*I.e.*, the cases now under consideration in this court.

[7]In this litigation, GPI contends that the WaterFall product is prior art to the '891 Patent. ERAN's attorney complained during the deposition that this particular brochure had not been produced by GPI prior to the deposition; however, the declarations filed by GPI's former employees state that the WaterFall literature was included in ERAN's Competing Product Information Binder at the times they left ERAN's employ. GPI, in turn, complains that ERAN did not produce the WaterFall

Albracht further testified that ERAN's patent attorney, Thomas Luebbering, refused to provide Albracht's patent attorney, Vincent DeLuca, a copy of their infringement opinion letter.[8]  Albracht denied entering into any joint interest agreement with ERAN.  Albracht denied that he had any joint defense agreement with ERAN or that he maintained a joint defense privilege with ERAN.  (Doc. 326-11 at pp. 3-4/5).  He testified that he did not meet with ERAN or its attorneys to discuss their infringement opinions and did not ever receive a copy of the opinions.  (Doc. 340-8 at p. 6/7, 22:15-25:23).  Albracht stated that he did not know if ERAN even had an infringement analysis.  (Doc. 340-24 at p. 5/7, 28:2-3).

In the summer of 2007, Albracht entered into a confidentiality agreement with GPI.  (Doc. 340-21 at p. 5/9, 47:15-21).  Albracht's testimony regarding the substance of this agreement was filed under seal and has been reviewed by the court.

## 2.   Legal Analysis

---

literature, even though the document was in ERAN's possession.

ERAN appears to contend that, since this particular brochure was copyrighted 1999, it could not serve as evidence of prior art and need not have been disclosed.  The court would tend to disagree, in light of ERAN's failure to produce its Competing Product Information Binder (which it now speculates would now be irrelevant due to updates) and Mr. Bachman's deposition testimony that he was aware that the WaterFall product was on the market in the spring of 1996, and discussed it and other such devices with Mr. Albracht in 1996.  (Doc. 340-7 at p. 4/6, 135:9-137:2).

[8]A copy of Mr. Luebbering's letter, dated April 4, 2006, was filed at Doc. 302-8, at p. 3/9.  It states:

Dear Mr. DeLuca:

Thank you for your March 31, 2006 letter.

We cannot simply send you a copy of our infringement opinion letter because doing so could waive the attorney-client privileged status of the letter.  We therefore suggest we either meet in person to discuss our infringement opinions or enter into a joint interest agreement before sending you any privileged documents.  Whichever option you prefer is fine with our client [ERAN].

Our client is not interested in Mr. Albracht's offer to sell his patents for $2.1 million.

ERAN now contends that  paragraph 2.9 of the settlement stipulation affords it a "joint defense" or "common interest" privilege as to its communications with Albracht because the agreement created a common interest in the '891 patent's validity and enforcement.  ERAN argues that Albracht is merely trying to escape his fee-sharing obligation by denying the existence of any joint defense agreement or privilege. Apparently, the documents currently being withheld on these grounds are listed on ERAN's "SECOND AMENDED AND SUPPLEMENTAL PRIVILEGE LOG" (Doc. 340-17).

Matters of privilege are governed by Rule 501 of the Federal Rules of Evidence. The primary claims in this action are based on federal patent law, and the court finds that the parties' privilege dispute is governed by the principles of the common law as interpreted by the courts of the United States in the light of reason and experience.  Fed. R. Evid. 501.

"Privileges, as exceptions to the general rule, 'are not lightly created nor expansively construed, for they are in derogation of the search for truth.'"  *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 (8th Cir. 1997), *cert. denied*, 521 U.S. 1105 (1997). Federal common law recognizes a privilege only in rare situations.  *Id*.

*In re Grand Jury Subpoena Duces Tecum*, 112 F.3d at 915-16 reflects the Eighth Circuit's recognition that the federal courts have relied upon Proposed Federal Rule of Evidence 503, also known as Supreme Court Standard 503, as an accurate definition of the federal common law of attorney-client privilege.  Standard 503, published at 56 F.R.D. 183, 235-37 (July 1, 1973), provides, in part:

> **(b)  General rule of privilege.**  A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between

17

his lawyer and the lawyer's representative, or ***(3) by him or his lawyer to a lawyer representing another in a matter of common interest***, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

(Emphasis added).[9]

The "common interest doctrine" recognized by the Eighth Circuit is as follows:

If two or more clients with a common interest in a litigated or non-litigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged... that relates to the matter is privileged as against third persons.  Any such client may invoke the privilege, ***unless it has been waived by the client who made the communication.***

*In re Grand Jury Subpoena Duces Tecum*, 112 F.3d at 922 (emphasis added) (quoting Restatement (Third) of the Law Governing Lawyers § 126(1) (Proposed Final Draft No. 1, 1996))[10].  The common interest may be either legal, factual, or strategic in nature.  *Pucket v. Hot Springs School Dist. No. 23-2*, 239 F.R.D. 572, 582-83 (D.S.D. 2006) (citing *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d at 922; Restatement (Third) of Law Governing Lawyers § 76 cmt. e (2000)).

─────────────

[9]This provision is substantially similar to Nebraska Evidence Rule 503(2), Neb. Rev. Stat. § 27-503(2).

[10]The Restatement (Third) of the Law Governing Lawyers has been revised.  Section 126 was moved to § 76, and currently provides:

**§ 76. The Privilege In Common-Interest Arrangements**

(1) If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged under §§ 68-72 that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, ***unless it has been waived by the client who made the communication***.  (Emphasis added).

(2) Unless the clients have agreed otherwise, a communication described in Subsection (1) is not privileged as between clients described in Subsection (1) in a subsequent adverse proceeding between them.

Restatement (Third) of the Law Governing Lawyers § 76 (2000).

18

Several factors present in this matter lead me to conclude that ERAN should not be allowed to assert any "common interest" or "joint defense" privilege as to documents pertaining to Albracht.  ERAN filed suit in this court against GPI and the third-party defendants (including 13 third-party defendants over whom this court had no personal jurisdiction) without consulting Albracht or showing Albracht that its allegations of infringement were reasonable.  ERAN has refused to provide Albracht any documentation supporting the claims of infringement it has asserted against GPI and the third-party defendants.  In the state court proceeding, counsel for ERAN stated in open court that there was no joint defense agreement between ERAN and Albracht, and announced that ERAN would not disclose its infringement analysis unless such an agreement was made.  Bachman also testified in state court that ERAN had no joint defense agreement in place with Albracht.  As of July 17, 2008, the date of Albracht's deposition, there was no joint defense agreement between Albracht and ERAN.  Albracht currently contends in the state court action that ERAN itself is in breach of the settlement/purchase agreement for failing to preserve certain international patent application rights.  Albracht has acknowledged that he negotiated an option agreement with GPI relating to the '891 Patent, in the event title to the '891 Patent was returned to him in the state court litigation.

Under these circumstances, the interests of ERAN and Albracht appear to be significantly adverse.  Heeding the rule that federal common law recognizes a privilege only in rare situations, the court finds that the interests of ERAN and Albracht are not sufficiently aligned to support ERAN's assertion of any "common interest" or "joint defense" privilege regarding information or documents pertaining to Albracht.

### III. CONCLUSION

19

ERAN has been ordered on two occasions to provide discovery to GPI, and has not persuaded the court that it conducted a reasonable investigation to locate responsive documents. The only evidence as to the scope of ERAN's investigation is Bachman's declaration that document production was, at some undisclosed time, delegated to his secretary, who could not find or identify documents responsive to nearly one-third of GPI's requests. It also seems quite likely that ERAN is in possession of the Competing Product Information Binder (or the equivalent thereof) described by Messrs. Herdrich, Beck and Hesse.

It appears that GPI has been unable to complete its depositions and discovery in accordance with Judge Gossett's scheduling order (Doc. 275) largely due to ERAN's sluggish and grudging document production and its faulty assertion of a "joint defense" or "common interest" privilege on many relevant areas of inquiry.

While the court sees little merit in most of ERAN's positions in these discovery disputes, the court believes that the parties' substantive claims should be decided on the merits. Accordingly, sanctions proposed by GPI that would result in the final disposition of issues in a manner adverse to ERAN will not imposed.

## ORDER

**IT IS ORDERED** that the Motion for Sanctions Pursuant to Rule 37(b) (Doc. 300), and the Motion to Compel, for Further Sanctions, and for Protection for Further Discovery (Doc. 324) filed by GP Industries, LLC, are granted, as follows:

1.    ERAN Industries, Inc., shall, within **five business days** of the date of this order, physically deliver to counsel for GPI the Competing Product Information Binder (or the equivalent thereof) described by Messrs. Herdrich, Beck and Hesse. If there is no

longer such a binder or collection of information in ERAN's possession or control, then ERAN shall file a written affidavit, within **five business days** of the date of this order, explaining exactly what happened to the original Competing Product Information Binder (or its equivalent) and why it cannot be produced.  If ERAN fails to comply with this paragraph, the court intends to issue an adverse inference instruction that ERAN's failure to produce this information should weigh against ERAN as to the validity of the '891 Patent.

2.     ERAN shall, within **five business days** of the date of this order, fully comply with NECivR 34.1(a) as to each of GPI's document requests to which ERAN maintains there are no responsive documents, or to which ERAN maintains it cannot find any responsive documents.  If additional responsive documents have been discovered by ERAN, they shall be delivered to counsel for GPI within **five business days** of the date of this order.

3.     GPI may reconvene the deposition of any witness who has invoked a "joint defense" or "common interest" privilege to inquire on topics as to which the privilege was originally asserted.  A reconvened deposition may not exceed four (4) hours in length.

4.     GPI is granted an extension of time to **November 28, 2008** in which to complete depositions and fact discovery.

Dated this 16th day of September, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

21